IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHAUNCEY BENNETT, #259742, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL ACTION NO. JKB-16-1532 |
| WARDEN KATHLEEN GREEN | * | |
| CAPTAIN SHYTINA DRUMMOND | | |
| P.A. BRUCE FORD | * | |
| SECRETARY STEPHEN MOYER | | |
| COMMISSIONER WAYNE WEBB | * | |
| Defendants. | * | |

*****

## **MEMORANDUM**

Pending before the court are a motion to dismiss, or alternatively, for summary judgment filed by defendant Ford (ECF No. 8), Chauncey Bennett's opposition (ECF No. 13), and Ford's replies and supplement. ECF Nos. 15, 18, & 27. In addition, state defendants Drummond, Green, Moyer, and Webb have filed a motion to dismiss or, in the alternative, for summary judgment, and Bennett has filed an opposition. ECF Nos. 23 & 25. Upon review of the pleadings filed, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, defendants' dispositive motions will be GRANTED.

### **I. Complaint Allegations**

Plaintiff Chauncey Bennett, an inmate currently confined at Eastern Correctional Institution ("ECI") in Westover, Maryland, filed this complaint alleging that defendants conspired to change his medical order for front handcuffing in January and February of 2015, without an examination. He claims that a physician changed the order back to front handcuffing eleven days later and alleges that the order was again changed to rear handcuffing a week later.

ECF No. 1, p. 4. He contends that Physician's Assistant Ford has committed fraud and he has suffered severe pain in his back and wrist. Bennett contends that he has twice received physical therapy and requires more treatment. He seeks compensatory and punitive damages, outside physical therapy, the restoration of front cuffing, and other miscellaneous relief.

## II. Defendants' Responses

Medical defendant Ford indicates that on January 7, 2015, he saw Bennett and an order for double rear handcuffing order was entered. ECF No. 8-3. Bennett was again seen on January 27, 2015 by orthopedist Dr. Joan Smith, who observed that Bennett had made a request for front cuffing due to orthopedic pins and hardware in his wrists. She made a request for front cuffing on his behalf. ECF No. 8-4. Bennett was again seen on February 13, 2015 by Ford, who documented an issue with the front handcuffing of the inmate in a housing unit. Ford noted that a "switch back to double rear cuffing which will meet the medical needs of the patient and address security concerns and mutual safety for all parties."[1] ECF No. 8-5. The front cuffing was discontinued and double rear cuffing was requested for one year. *Id.* Bennett was again seen by Ford on February 18, 2015, regarding an issue with Bennett's wrist and rear cuffing. Ford noted that Bennett had a history of an open reduction and internal fixation ("ORIF") to his wrist, without deformity. Ford explained that the rear cuffing would not harm the right wrist, the back pain Bennett complained of would not prevent rear cuffing, and the double rear cuffing would also be helpful in preventing further issues with the shoulder of which Bennett complained. Ford noted that Bennett refused to allow his wrist to be examined. An order for double rear cuffing was entered and the note documenting this entry was co-signed by Dr. Joan

---

[1] When double cuffed, Bennett is cuffed from behind with two sets of handcuffs, to allow for any decreased range of motion in his wrists.

Smith, the orthopedist. ECF No. 8-6. Ford argues that Bennett was examined by both Ford and the orthopedist who agreed that double rear cuffing would meet Bennett's needs and address security concerns. He asserts that Bennett did receive an accommodation in the form of rear double-cuffing

In response, Bennett argues that Ford committed fraud as he disregarded Dr. Smith's order for front cuffing. He claims that the order was twice switched without conducting an examination. ECF No. 13.

The State defendants assert that as Bennett is assigned to disciplinary segregation, Division of Correction ("DOC") policy mandates that he be handcuffed whenever he is out of his cell. ECF No. 23-2. Further, DOC regulations direct that all inmates be handcuffed behind the back at all times during escort, although they may be handcuffed in the front, as determined by the warden or shift commander, on a case by case basis.

The State defendants assert that Bennett was found guilty of assaulting another inmate on December 5, 2014, and was placed on disciplinary segregation on December 30, 2014, where he remained until June 2, 2015. They argue that he was on segregation during the time the incidents occurred. Defendant Drummond affirms she has never acted to interfere with Bennett's medical care and did not conspire with Ford or others to change Bennett's front cuffing medical order and she has no authority to give orders to ECI medical staff and no influence over medical decisions. ECF No. 23-3, Drummond Decl.

## III. Standard of Review

**Motion for Summary Judgment**

Because defendants have filed and relied on declarations and exhibits attached to their dispositive motions, their motions shall be treated as summary judgment motions. Summary judgment is governed by Federal Rule of Civil Procedure 56(a), which provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526

(internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986), the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

## IV. Analysis

**A.    Medical Claims**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized

by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . To lower this threshold would thrust federal courts into the daily practices of local police departments." *Grayson v. Peed*, 195 F.3d 692, 695- 96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'"

*Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

In essence, for plaintiff to prevail, the treatment rendered must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness. *Miltier*, 896 F.2d at 851 (citation omitted), *overruled in part on other grounds by Farmer,* 511 U.S. at 837; *aff'd in pertinent part by Sharpe v. S.C. Dep't of Corr.*, 621 F. App'x 732 (4th Cir. 2015) (Mem.). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Id*. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). Mere negligence or malpractice does not rise to a constitutional level. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Estelle v. Gamble, supra,* 429 U.S. at 106).

The right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be

considered merely *desirable.*" *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir.1977). The record evidence indicates that plaintiff's requests for treatment were considered and his needs addressed. The delays that have occurred do not appear to be deliberate, nor have they resulted in harm to plaintiff. To the extent some of plaintiff's complaints have gone unaddressed, "an inadvertent failure to provide adequate medical care does not amount to deliberate indifference." *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Bennett's numerous grievances are reflective of his frustration, but "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir. 1970)). There are no exceptional circumstances alleged in this case.

The record shows that during the course of a 45-day period, orders for Bennett's restraints during escorts were changed by healthcare providers from front cuffing to double rear cuffing (two sets of handcuffs) in light of his segregation housing and the absence of any medical reason for not cuffing him from behind. Indeed, according to the exhibits provided to the court, the decision to change the physician order to rear double cuffing was made to accommodate any decrease in Bennett's wrist mobility. Bennett has failed to show that Ford or Drummond conspired to intentionally deny him a medically necessary restriction in the face of a need for further accommodation of a serious medical need.

**B.     Respondeat Superior**

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no

respondeat superior liability in a *Bivens* suit). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Bennett has failed to point to any personal conduct by defendants Moyer, Webb, or Green regarding the use of restraints. His effort to hold these administrators liable based on their supervisory role is unavailing. Moyer, Webb, and Green are entitled to have the complaint dismissed against them.

In sum, there is nothing in the record to suggest that any of the named defendants were deliberately indifferent to Bennett's serious medical needs. As such, defendants are entitled to summary judgment.

A separate Order follows.

Date: <u>July 12, 2017</u>  　　　　　　　／s／_____
　　　　　　　　　　　　　　　　　　James K. Bredar
　　　　　　　　　　　　　　　　　　United States District Judge